**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **DALE THEODORE SHAFER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 12-1151-JWL** |
| **CAROLYN W. COLVIN,**[1] | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability(SSD) benefits under sections 216(i) and 223 of the Social Security Act.  42 U.S.C. §§ 416(i) and 423 (hereinafter the Act).  Finding no error in the Commissioner's final decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

## I.      Background

_____

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for SSD, alleging disability beginning March 13, 2009. (R. 45, 162). In due course, Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. He alleges the Administrative Law Judge (ALJ) erred in weighing the medical opinions; in deciding at step three of the sequential evaluation process that Plaintiff's condition does not meet or equal Listing 1.04A; and in failing to address Plaintiff's mental impairments properly or to order a consultative psychological examination, and seeks the court's review of these alleged errors.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the

determination whether substantial evidence supports the Commissioner's decision is not

simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v.

Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a

claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136,

1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).

"If a determination can be made at any of the steps that a claimant is or is not disabled,

evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting

Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether

claimant has engaged in substantial gainful activity since the alleged onset, whether he

has a severe impairment(s), and whether the severity of his impairment(s) meets or equals

the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt.

P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner

assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step

four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process--

determining at step four whether, in light of the RFC assessed, claimant can perform his

past relevant work; and at step five whether, when also considering the vocational factors

of age, education, and work experience, claimant is able to perform other work in the

economy. <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. <u>Blea v. Barnhart</u>, 466 F.3d 903, 907 (10th Cir. 2006); <u>accord</u>, <u>Dikeman v. Halter</u>, 245 F.3d 1182, 1184 (10th Cir. 2001); <u>Williams</u>, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. <u>Id.</u>; <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court addresses Plaintiff's alleged errors in the order they would be reached in applying the Commissioner's sequential evaluation process, and finds no error in the decision at issue.

## II.    Step Three

Plaintiff argues that the ALJ failed to evaluate properly whether Plaintiff's condition meets or equals the severity of Listing 1.04A. He argues that the ALJ erred by relying upon the fact that counsel at the hearing did not specifically argue that Plaintiff's condition meets or equals a listing; and that the record, in fact, contains evidence that each of the criteria of Listing 1.04A are met, and if the ALJ had addressed those criteria he would have found the Listing met. (Pl. Br. 15-16). He argues that, in any case, "the ALJ made no effort to determine whether [Plaintiff's] condition equaled the Listing 1.04A." (Pl. Br. 17). The Commissioner argues that Plaintiff has not shown that <u>all</u> of the criteria of Listing 1.04A are met because Plaintiff has not shown evidence of nerve root compression during the relevant time--<u>after</u> the surgery on his neck which repaired

the nerve root compression.  (Comm'r Br. 8).  Moreover, she acknowledges that certain criteria may be present intermittently, but that "their presence over a period of time must be established by a record of ongoing management and evaluation."  Id. at 9 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00D).  With regard to medical equivalence, the Commissioner argues that such a finding requires "medical findings equal in severity to all the criteria for the one most similar listed impairment," and that "Plaintiff does not even attempt to explain what specific medical findings were equivalent in severity to the criteria of listing 1.04A."  Id. at 10-11 (quoting 20 C.F.R. § 404.1526).

### A.    Standard for Evaluating Step Three and Listing 1.04A

The Commissioner has provided a "Listing of Impairments" which describes certain impairments that she considers disabling.  20 C.F.R. § 404.1525(a); see also, Pt. 404, Subpt. P, App. 1 (Listing of Impairments).  If a claimant's condition meets or equals the severity of a listed impairment, his impairment is conclusively presumed disabling.  Williams, 844 F.2d at 751; see Bowen v. Yuckert, 482 U.S. 137, 141 (1987) (if claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled").  However, plaintiff "has the burden at step three of demonstrating, through medical evidence, that his impairments 'meet all of the specified medical criteria' contained in a particular listing."  Riddle v. Halter, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in Zebley)).  "An impairment that manifests only some of [the listing] criteria, no matter how severely, does not qualify" to meet or equal the listing.

Zebley, 493 U.S. at 530.  Medical equivalence to a listing may be established by showing

that the claimant's impairment(s) "is at least equal in severity and duration to the criteria

of any listed impairment."  20 C.F.R. § 404.1526(a).  The determination of medical

equivalence is made without consideration of vocational factors of age, education, or

work experience.  20 C.F.R. § 404.1526(c).

 "The [Commissioner] explicitly has set the medical criteria defining the listed

impairments at a higher level of severity than the statutory standard.  The listings define

impairments that would prevent an adult, regardless of his age, education, or work

experience, from performing any gainful activity, not just 'substantial gainful activity.'"

Zebley, 493 U.S. at 532-33 (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)).

The listings "streamlin[e] the decision process by identifying those claimants whose

medical impairments are so severe that it is likely they would be found disabled

regardless of their vocational background."  Yuckert, 482 U.S. at 153.  "Because the

Listings, if met, operate to cut off further detailed inquiry, they should not be read

expansively."  Caviness v. Apfel, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

 As relevant here, Listing 1.04A regards disorders of the spine producing "evidence

of nerve root compression:"

> 1.04  Disorders of the spine (e.g., herniated nucleus pulposus, spinal
> arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet
> arthritis, vertebral fracture) resulting in compromise of a nerve root
> (including the cauda equina) or the spinal cord.
>
> With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R., Pt. 404, Subpt. P, App. 1.

As the quotation above reveals, the criteria of Listing 1.04A (nerve root compression) are: (i) neuro-anatomic distribution of pain, (ii) limitation of motion of the spine, (iii) motor loss accompanied by either (a) sensory loss, or (b) reflex loss, and (only if the lower back is involved) (iv) positive straight-leg raising, while (a) sitting and (b) supine.

## B.    Analysis

In arguing that the evidence shows nerve root compression before Plaintiff's neck surgery, but not thereafter because "an MRI from April 2009 [(after the surgery)] revealed 'postop changes only' with no indication of any residual nerve root compression" (Comm'r Br. 8), the Commissioner expects too much of the medical evidence, because "nerve root compression" in the cervical spine is "characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, [and] motor loss," not by a specific finding of "nerve root compression" on an MRI report or a specific statement to that effect by a physician. The question for the court is whether the ALJ's finding (that the record evidence does not demonstrate nerve root compression) is supported by the record evidence as required by Listing 1.04A the court does not look for "magic words" in the evidence.

The ALJ noted that "Claimant did not allege at hearing or otherwise that any particular impairment or combination of impairments met or equaled any of the listings." (R. 49) (citing Representative's Brief, Ex. 8E). The ALJ concurred, and found "that the claimant did not meet their [sic] burden of proof" with regard to the Listings. Id. Plaintiff argues that this is error and that the error was compounded because the ALJ did not discuss evidence demonstrating that Listing 1.04A was not met.

The ALJ is correct that Plaintiff did not argue at the hearing or in his Representative's Brief that his condition meets or equals the severity of any Listing, including Listing 1.04A. The record evidence supports that finding, and Plaintiff cannot show otherwise. Moreover, the ALJ specifically considered Listing 1.04A and found that the listing is not met because Plaintiff does not have "evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, [and] motor loss." (R. 49). Plaintiff's argument that it was error for the ALJ to fail to discuss the record evidence supporting this finding is meaningless because the ALJ found the record does not show evidence of nerve root compression. The ALJ cannot further discuss evidence which does not exist. Therefore, if the ALJ erred, it is incumbent on Plaintiff to show the evidence that the ALJ missed. The court finds that Plaintiff has not shown evidence in the record that his condition met all of the criteria of Listing 1.04A after his neck surgery and before the decision in this case.

The medical evidence to which Plaintiff cites in arguing that he meets the criteria of Listing 1.04A relies in several respects on a report of consultation prepared by Dr.

Dickerson on September 19, 2011, almost three months after the ALJ's decision in this case. (Pl. Br. 16) (citing R. 21 ).[2] However, as Plaintiff acknowledges, the Appeals Council determined that this evidence relates to a time after the ALJ's decision, did not make the evidence a part of the administrative record in this case, and returned the evidence to Plaintiff without deciding the case based on that evidence. See, (R. 2) ("This new information is about a later time." "We are returning the evidence to you."); (Pl. Br. 3) ("the Appeals Council determined that this evidence does not relate back to the time period prior to the date of the ALJ decision and returned the additional evidence to the plaintiff without further discussion.").

The court's review is limited, and is based only upon the "transcript of the record." 42 U.S.C. § 405(g) (sentence four). And, because Plaintiff in his Social Security Brief did not make "a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior

_____

[2]In his Reply Brief, Plaintiff argues for the first time that the Appeals Council erred in failing "to consider this new and material evidence." (Reply 1). The court will not address this argument because it was not raised in Plaintiff's opening brief, thereby depriving the Commissioner of an opportunity to respond. Water Pik, Inc. v. Med-Systems, Inc., 726 F.3d 1136, 1159, n.8 (10th Cir. 2013) (citing King of the Mountain Sports, Inc. v. Chrysler Corp., 185 F.3d 1084, 1090, n.2 (10th Cir. 1999) (argument waived when raised for the first time in a reply brief). Moreover, the report upon which Plaintiff relies is based upon an MRI which was performed on September 7, 2011 (more than two months after the decision in this case), and the report of that MRI is significantly different from the most recent MRI report which is in the administrative record in this case, dated March 26, 2009. Compare (R. 26-27) with (R. 274-75, 630-31). Plaintiff makes no showing that the severity of problems presented in the September, 2011 MRI necessarily relate back to the period covered by the ALJ's decision at issue here.

9

proceeding," remand pursuant to sentence six of 42 U.S.C. § 405(g) cannot be had.

Because the evidence upon which Plaintiff's argument relies is not a part of the

administrative record in this case, and because it relates to a time after the period at issue

here, that evidence cannot support plaintiff's argument that his condition meets or equals

the severity of a Listing. Plaintiff does not point to, and the court's review does not find,

any evidence in the record demonstrating neuro-anatomic distribution of pain after

Plaintiff's surgery and before the date of the decision in this case. Therefore, as the

Commissioner argues, at least one of the criteria of Listing 1.04A is not met, and Plaintiff

cannot show that his condition met Listing 1.04A before the decision in this case.

As to the question whether Plaintiff's condition is medically equivalent to Listing

1.04A, the Commissioner is correct that the ALJ specifically found that Plaintiff "does

not have an impairment or combination of impairments that . . . medically equals one of

the listed impairments." (R. 49) (emphasis omitted). And, as the commissioner also

points out, Plaintiff does not point to medical findings in the record demonstrating that his

impairment "is at least equal in severity and duration to the criteria of" Listing 1.04A. 20

C.F.R. § 404.1526(a). Plaintiff has shown no error in the step three finding.

## III.    Mental Impairments

Plaintiff acknowledges that the ALJ found at step two of the sequential evaluation

process that his mental impairments of depression and anxiety were not severe, but he

argues that the ALJ failed to consider limitations resulting from those impairments in the

RFC assessed, and failed to develop the record properly regarding mental limitations by

10

failing to order a psychological consultative examination.  The Commissioner argues that

the ALJ properly applied the Psychiatric Review Technique and thoroughly considered

Plaintiff's mental impairments, finding that they do not significantly limit plaintiff's

ability to perform basic mental work activities.  She argues that Plaintiff points to no

record evidence compelling additional mental limitations, and that the ALJ was well

within his discretion not to order a psychological examination because the record

evidence does not clearly establish the need for such an examination.  The court begins

with considering whether the ALJ failed in his duty to develop the record.

### A.    Duty to Develop the Record

> The ALJ has a basic obligation in every social security case to
> ensure that an adequate record is developed during the
> disability hearing consistent with the issues raised.  This is
> true despite the presence of counsel, although the duty is
> heightened when the claimant is unrepresented.  The duty is
> one of inquiry, ensuring that the ALJ is informed about facts
> relevant to his decision and learns the claimant's own version
> of those facts.

> Henrie v. U.S. Dep't of Health & Human Servs., 13 F.3d 359, 360-61 (10th
> Cir. 1993) (citations, quotations, and brackets omitted).  Further, under 20
> C.F.R. § 404.1512(e), "[w]hen the evidence [the agency] receive[s] from [a
> claimant's] treating physician or psychologist or other medical source is
> inadequate for [the agency] to determine whether [the claimant is] disabled,
> [the agency] will need additional information to reach a determination or a
> decision." [3]

---

[3]20 C.F.R. § 404.1512(e) was amended effective February 23, 2012 to eliminate
this provision from the regulation.  77 Fed. Reg. 10,651, 10,655 (Feb. 23, 2012).  The
amendment was effective after the decision in this case and does not enter into the court's
reasoning, but if effective earlier would provide further support for its determination.

Cowan v. Astrue, 552 F.3d 1182, 1187 (10th Cir. 2008).

> "Ordinarily, the claimant must in some fashion raise the issue sought to be developed which, on its face, must be substantial. Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." If []he does so, then the ALJ's duty to order a consultative examination arises. "Isolated and unsupported comments by the claimant are insufficient, by themselves, to raise the suspicion of the existence of a nonexertional impairment."

Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2007) (quoting Hawkins v. Chater,

113 F.3d 1162, 1167 (10th Cir. 1997)) (citations omitted).

Plaintiff argues that the ALJ had a duty to order a consultative psychological examination in this case because medical records from both his primary care physician and his surgeon indicate that his mental condition deteriorates when he becomes stressed and because his attorney at the hearing specifically asked that a consultative examination be ordered. That is not the standard. When the plaintiff has satisfied his burden to present evidence to suggest a reasonable possibility that a severe impairment exists, "it then, and only then, becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment." Hawkins, 113 F.3d at 1167.

Plaintiff has not presented evidence suggesting a reasonable possibility that a severe impairment exists. First, he acknowledges that the ALJ found that his mental impairments are not severe (Pl. Br. 17), and he does not allege error in that determination. Moreover, the treatment records to which he cites do not suggest that Plaintiff's anxiety

or depression are severe. In September, 2006, two and one-half years before Plaintiff stopped working and before the alleged onset of his disability, his treating physician noted that Plaintiff was upset because both his grandmother and his aunt had died recently, that his wife had "major depression" (R. 441), and that with the "recent stressors-work/wife/deaths" he was overwhelmed and his blood sugar readings had flared. (R. 442). The physician noted that the multifactorial triggers snowballed and Plaintiff "fails to function." Id. He concluded that there was a "need to get them all [(plaintiff, wife, and son)] into family counseling & psychiatry as well." Id. However, there is no indication that this intent was ever followed up on, there is no record of either individual or family counseling in response to this suggestion, and Plaintiff continued to work despite these stressors until March 13, 2009, when the business he was working for "closed their doors." (R. 72). The other evidence to which Plaintiff cites is a report by his surgeon, dated October 12, 2010, in which the surgeon reported that in an office visit on October 8, 2009 he noted that Plaintiff "had 'fallen into a deep depression and/or melancholy state because of the breakup of his marriage.'" (R. 662) (without attribution of the quotation). The surgeon also noted that Plaintiff "blamed the [(neck)] surgery for his marital breakup." Id. Once again, there is no indication that any psychiatric or psychological treatment or counseling was recommended or taken as a result of the surgeon's observation. In fact, in the same report the surgeon noted that Plaintiff "subsequently returned to the [surgeon's] office on January 21, 2010, without particular

complaints." Id. Moreover, the ALJ specifically noted that the "claimant testified at the hearing that he is not seeing anyone for depression at the current time." (R. 48).

Plaintiff's request at the close of the hearing for a consultative examination does not require a different finding. The Commissioner is not required to order such an examination merely because Plaintiff or his counsel request it. As discussed above, Plaintiff has not provided evidence of a reasonable possibility that a <u>severe</u> impairment exists. Moreover, counsel's request was, at the least, equivocal and ambivalent. (R. 88-89). Here is the transcript of the exchange regarding counsel's request for examination:

> ATTY: Would lt be prudent for me to ask if you would consider possible, like, a psych CE? It doesn't appear that there's any treatment that could possibly be a significant factor in his problems today.

> ALJ: Well, I mean --

> ATTY: It's up to you.

> ALJ: -- his impairments are pretty well documented.

> ATTY: Okay.

> ALJ: I mean, I have to look at the records. I think there were some things that haven't been looked at. That's diabetic retinopathy, diabetic neuropathy. If it's in there, great.

> ATTY: The neuropathy is. I did -- the first couple of pages show it. They show a diagnose state. Actually that's very helpful how they put it out there.

> ALJ: Okay.

> ATTY: But the depression isn't.

CLMT: Oh, the persons in there were my mother and my aunt died because [INAUDIBLE]

ATTY: No, I understand. It is present ln the record of the treatment --

ALJ: Okay.

ATTY: -- and everything but --

ALJ: Okay.

ATTY: -- lt's up to you.

ALJ: All right. Well, the hearing is closed.

(R. 88-89). As this exchange reveals, counsel made a half-hearted request if it would be prudent for him to ask if the ALJ would possibly consider a psychological consultative examination ("a psych CE"). The ALJ noted that the need for a consultative examination depended on the state of the evidence in the administrative record, and counsel admitted that evidence regarding neuropathy is in the record, but alleged that the evidence of depression was incomplete. Twice, counsel retreated and acquiesced in accepting no consultative examination: "It's up to you." (R. 88, 89). As noted above, some of the evidence upon which Plaintiff relies to demonstrate a need for a consultative examination relates to a period two-and-a-half years before his alleged onset date and while he was still working at substantial gainful activity. Moreover, the evidence at that time seems to refer to depression related to life situations regarding the death of his grandmother and aunt, and his wife's depression. The remaining evidence upon which Plaintiff relies likewise relates to situational stress "a deep depression and/or melancholy state" brought

on by the recent breakup of his marriage.  As discussed above, this evidence does not

suggest a reasonable possibility that a <u>severe</u> impairment exists.  Moreover, the ALJ

considered the evidence to which Plaintiff cites which relates to the alleged period of

disability, and found that there was "no notation of any treatment prescribed by this

physician, and the undersigned notes that the reference is over a year old at the time of the

written note.  The claimant testified at hearing that he is not seeing anyone for depression

at the current time.  The claimant is still going through his divorce, although he stated that

he has not heard from anyone regarding it since he moved from California to Kansas."

(R. 48).  In these circumstances, the court cannot find that it was error for the ALJ to fail

to order a consultative psychological examination.

The court's discussion above demonstrates that the ALJ adequately considered and

discussed Plaintiff's depression and anxiety.  He properly found these mental

impairments are not severe within the meaning of the Act.  The record demonstrates that

Plaintiff worked at substantial gainful activity for two-and-a-half years while suffering

from these impairments, and Plaintiff points to no record evidence demonstrating greater

mental limitations than those assessed by the ALJ which are the result of these mental

impairments.  Plaintiff has shown no error in the ALJ's evaluation of his mental

impairments.

## IV.    Weighing the Medical Opinions

Plaintiff points out that his surgeon, Dr. Morgan, opined in January 2010 that he is

unemployable, and wrote a more detailed summary of Plaintiff's treatment in October,

2010.  (Pl. Br. 12) (citing R. 271, 661-62).  Plaintiff argues that because Dr. Morgan is a

treating physician, his treating source opinion should have been giving controlling, or at

least deferential weight, that the ALJ failed to give specific, legitimate reasons for

according "very little weight" to Dr. Morgan's opinion, that the subsequent opinions of

Dr. Dickerson and Dr. Gregory support Dr. Morgan's opinion, and that the ALJ erred in

according "substantial weight" to the non-treating source opinion of Dr. Taylor.  The

Commissioner argues that the ALJ appropriately evaluated the medical opinions of Dr.

Taylor and Dr. Morgan, and that substantial record evidence supports that evaluation.

She argues that the opinion of Dr. Morgan is not a "medical opinion" but is an opinion on

the ultimate issue of disability, an issue which is reserved to the Commissioner.  She

argues that although such opinions are not to be ignored, they are "never entitled to

special or significant weight."  Comm'r Br. 20).  The court agrees with the Commissioner

and finds no error in the ALJ's evaluation of the medical opinions.

### A.    The ALJ's Evaluation of the Opinion Evidence

The ALJ evaluated the opinions of Dr. Morgan and Dr. Taylor:

> As for the opinion evidence, the undersigned notes opinions by Dr. David
> F. Morgan, M.D. stating that the claimant is unemployable as of January
> 2010, due to his cervical and lumbar problems.  (Exhibit 3F at 4)  In a
> narrative letter written October 12, 2010, Dr. Morgan states that the
> claimant was neurologically stable at the time of his last visit and that he
> had not examined the claimant since January 2010.  (Exhibit 11F at 2)  He
> then stated in the October 2010 letter that the claimant was unable to return
> to previous work and that there was no work that the claimant was capable
> of performing unless there is substantial improvement, which was unlikely.
> The undersigned is mindful that a determination of disability is a result of a
> functional analysis, comparison to the job base and reserved to the

17

Commissioner of Social Security. (SSR 96-5p) Dr. Morgan states that the January office visit showed that the claimant had no particular complaints other than continued neck pain and some slight weakness in his left hand and that he was getting along satisfactorily. However, he felt that, on balance, that the claimant was unemployable. This is a contradictory statement, and the evidence of record does not support a finding of disability. The op[i]nion is based on an examination that is over 10 months old and is not explained in terms of how the claimant is getting along satisfactorily but at the same time cannot work. In November 2009, Dr. Morgan stated that the claimant could return to work in January 2010. (Exhibit 2F at 7) The undersigned gives this opinion little weight because it is unsupported by the medical evidence as a whole, contradictory, and a conclusory opinion not grounded in an analysis of the claimant's capability as compared to the vocational base.

The undersigned gives substantial weight to the opinion of Dr. Ursula Taylor, M.D. who performed the consultative examination of the claimant in February 2010. (Exhibit 6F, duplicate at 9F) Based on her examination of the claimant's longitudinal history and objective examination she opined that the claimant was limited to a range of light work. She noted that the claimant was limited in postural movements and should be limited in the use of his bilateral hands due to his limitations from his neck condition. The undersigned finds that this opinion reflects the objective medical evidence as discussed above and reflects it in the above residual functional capacity, noting that the undersigned also has added additional restrictions based on the medical evidence.

(R. 52-53).

## B.    Analysis

As the Commissioner's Brief suggests, "medical opinions" are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s), including [claimant's] symptoms, diagnosis and prognosis, what [claimant] can still do despite impairment(s), and [claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2),

416.927(a)(2).  Therefore, Dr. Morgan's opinion is a "medical opinion" only to the extent that his opinion that Plaintiff is unemployable reflects a judgment about what Plaintiff "can still do despite impairment(s)."  Moreover, as the ALJ noted, determination of issues reserved to the Commissioner, such as opinions regarding whether a plaintiff is disabled, will not be given any special significance or controlling weight.  20 C.F.R. § 404.1527(e)(2 & 3); <u>Soc. Sec. Rul.</u> (SSR) 96-5p, West's Soc. Sec. Reporting Serv. 123-24 (Supp. 2013); SSR 96-8p, West's Soc. Sec. Reporting Serv. 150, n.8 (Supp. 2013).  Therefore, Dr. Morgan's opinion that Plaintiff is unemployable is an opinion on an issue reserved to the Commissioner, and although it may not be ignored, it will not be given any special significance as the opinion of a treating source.  Consequently, Plaintiff's argument that the opinion should have been given either controlling weight or deference as a treating source opinion is without force.

The ALJ stated that he discounted the opinion because it is an opinion on an issue reserved to the Commissioner, because the opinion conflicted with Dr. Morgan's treatment notation that Plaintiff was getting along satisfactorily, because the record evidence does not support a finding of disability, and because Dr. Morgan reported in November 2009 that he expected Plaintiff could return to work in January 2010.  The record evidence supports each of these reasons, and although Plaintiff attempts to explain the evidence more favorably to a finding of disability, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  [The court] may not displace the

agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

Plaintiff's argument that the subsequent opinions of Dr. Dickerson and Dr. Gregory lend support to Dr. Morgan's opinion ignores the fact that the Appeals Council returned those opinions to Plaintiff without making them a part of the administrative record in this case, and as such, the court may not rely on them to find error in the ALJ's decision.

Finally, Plaintiff has not shown error in the ALJ's evaluation of Dr. Taylor's opinion. The ALJ accorded "substantial weight" to Dr. Taylor's opinion because of her objective examination of Plaintiff, because of her examination of Plaintiff's longitudinal history, and because the opinion reflects the objective medical evidence. (R. 53). Plaintiff's argument that Dr. Taylor's opinion is "not entitled to the same weight as Dr. Morgan" (Pl. Br. 12), is based on Dr. Morgan's position as a treating source, but the court has already explained that Dr. Morgan's opinion is worthy of no special significance as a treating source opinion because it is an opinion on an issue reserved to the Commissioner. Therefore, that is not a basis to find error in the ALJ's evaluation.

In an argument that is not entirely clear, Plaintiff asserts that the ALJ erred in according weight to Dr. Taylor's opinion "based on her examination of the claimant's longitudinal history" (R. 53) because "[c]ontrary to the ALJ's decision, Dr. Taylor's

20

report indicated "[t]here were no medical records available for review."  (Pl. Br. 13) (citing R. 332).  Plaintiff appears to argue that because Dr. Taylor had no medical records available for review she could not have examined claimant's longitudinal history.  That argument is simply a <u>non sequitur</u>.  While it may be <u>possible</u> to examine an individual's longitudinal medical history by reviewing his medical records, it is not <u>necessary</u> to do so.  Dr. Taylor's report indicates that she investigated the "History of [Plaintiff's] Present Illness," his "Past Medical History/Past Surgical History," his "Family History," and his "Social History," and she related that investigation to her "Diagnostic Impression."  (R. 329-33).  This is clearly sufficient evidence upon which the ALJ might accord weight to Dr. Taylor's opinion based, at least in part, on the physician's "examination of the claimant's longitudinal history."  (R. 53).  Plaintiff shows no error in the ALJ's evaluation of the medical opinions, and as discussed above has shown no other error in the decision at issue.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 16th  day of October 2013, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**